**Nathan Gewirtz, Defendant in Error, v. Wolf Abraham and Herman Vinik, copartners as Abraham & Vinik, Plaintiffs in Error.**

**Gen. No. 16,399.**

1. CONTRACT—*when not binding if no delivery.* A sealed contract which recites that the consideration shall be paid on the delivery of the instrument is not executed or binding until such delivery.

2. CONTRACT—*when canceled.* Where a contract not binding for want of delivery is delivered up with another contract covering the same transaction, this amounts to a cancellation by mutual consent.

3. PARTNERSHIP—*one member can bind, on contract.* One member of a bakery firm has power to bind the other on a contract disposing of part of their route and good-will.

4. LIQUIDATED DAMAGES—*when sum stipulated for breach of contract constitutes.* Where a contract of sale of part of a bakery route and good-will recites that the consideration shall be re-

funded on a breach thereof, such amount will be considered as liquidated damages and not as a penalty.

5. CONTRACTS—*restraint of trade.* A contract by a baking firm, not to sell any bread to dealers or strangers from South Chicago is not illegal as in unreasonable restraint of trade.

Error to the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in this court at the March term, 1910. Affirmed. Opinion filed June 17, 1912.

FRED BERNSTEIN, for plaintiff in error.

SEYMOUR N. COHEN, for defendant in error.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

January 13, 1910, the defendant in error, the plaintiff below, recovered in the Municipal Court of Chicago a judgment against the plaintiffs in error, defendants below, for $275. The judgment was rendered on the verdict of a jury, but the jury were peremptorily instructed by the court to find for the plaintiff.

The trial of the case disclosed the following state of facts. The plaintiff (the defendant in error) was a baker doing business at 8734 Houston avenue in that part of Chicago known as South Chicago. In the course of said business he delivered bread to certain customers in South Chicago by wagon.

The defendants, plaintiffs in error, were likewise retail bakers doing business at 1053 West 61st street in Chicago, in the territory known as Englewood, and delivered bread by wagon to various customers in Englewood and in South Chicago. Thus the parties were competitors in business in South Chicago.

On June 11, 1909, the plaintiff Gewirtz and the defendant Abraham met in South Chicago and signed the following document.

"This agreement made this 11th day of June, 1909, by and between W. Abrahams and H. Vinik of the city of Chicago, county of Cook and State of Illinois, party of the first part, and Nathan Gewirtz of the city of

Chicago, county of Cook and State of Illinois, party of the second part. The party of the second part agrees to pay to the parties of the first part the sum of three hundred and no-100 dollars, the receipt of which is hereby acknowledged on delivery of this instrument, for the parties of the first part bakery route and good will in South Chicago, Ills., to any merchant or private individual direct or indirect. And further the parties of the first part agree not to sell or give away to any merchant or private individual who may call at their place of business (at Englewood) for breadstuff from South Chicago, Ills.

In witness whereof, the parties to these presents have hereunto set their hands and seals the day and year first above written.

W. Abraham & H. Vinik, (Seal).

By Wolf Abraham.

his

Nathan X Gewirtz, (Seal).

mark.

Sealed and delivered in the presence of

M. S. Furnam,

I. B. Englestein.

In duplicate.

Witness to mark,

M. S. Furman.''

This document, however, was kept by Abrahams and Gewirtz refused to pay the $300. A week later a third party, one Farber, a salesman for a milling concern, seems to have intervened to bring the parties together again at his place in Chicago. Vinik came there and next Gewirtz and undertook to act for the firm. Farber drew up another contract, which Vinik and Gewirtz signed. It read:

"Chicago, 6-17, 1909.

We, Abrahams and Vinig, agreed to give over all the customers and all the treade which we delivered bread & rolls, etc., for the sume of $275 to Mr. Gewirtz for all the tread of So. Chicago, Ill. We, Abraham & Vinig, also agreed not to sale any bread even at my place of business to the dealers from So. Chicago and

to strangers from So. Chicago with oure knowledge, in case we do the sume of $275 shal be returned.

Witness by

ABRAHAM & VINIK,
By Herman Vinik.
X NATHAN GEWIRTZ.''

This document was left with Farber by Vinik to be delivered to Gewirtz on the payment of $275. Gewirtz deposited $45 or $50 with Farber, on account of the money to be thus paid and promised to bring the rest next day.

On the next day Gewirtz and Abraham met at Farber's place. Gewirtz made up the $275 with the additional money which he brought and gave it to Farber, who in turn paid it over to Abraham. Abraham gave up to Gewirtz the document which was dated June 11th and had not been before delivered, and there was also delivered to Gewirtz (apparently by Mr. Farber who had been holding it since the preceding day) the document dated June 17th.

The evidence produced for the plaintiff in this action shows clearly that Abraham and Vinik, after a few weeks—about two months—broke their contract not to sell bread to their former customers in South Chicago. The plaintiff testified that Abraham admitted to him that they were so selling and announced their intention to continue to do so. Two witnesses testified to having bread delivered to them in South Chicago by the defendants' employe or agent, and one of them testified that Abraham offered to employ him in selling his bread in South Chicago.

After Abraham admitted the sales and announced his intention to continue them, the plaintiff brought the suit at bar. After the evidence for the plaintiff was taken a motion was made by the defendants' counsel for a peremptory instruction to the jury to find for the defendants. The court refused it, and counsel then said: ''I will offer no evidence. The defendants rest.'' Thereupon the court instructed the

jury to find for the plaintiff in the sum of $275, which they accordingly did. We do not think there was any injurious error in this. The case might properly enough have been left to the jury without peremptory instruction, but they could not, as reasonable men, have found otherwise. The document first above recited of June 17, 1909, although signed by both parties, could not properly be considered as executed and binding while Abraham held it and the money had not been paid. It had not been delivered. If it were to be so considered, it must be considered also as abrogated and cancelled by mutual consent when Abraham gave it up to Gewirtz a week later. But the second document was a binding contract between the plaintiff and the defendants, duly signed and delivered for the consideration expressed. There is no merit in the suggestion of the defendants that there was a lack of Abraham's knowledge or consent. Abraham, for the purposes involved in this transaction, was Vinik, and Vinik was Abraham. Each had power to bind the other and the firm.

The chief contention between counsel seems to be on the measure of damages for the breach of this contract, and whether the $275 should be considered a penalty or liquidated damages.

We do not think it necessary to review the cases cited so abundantly by the briefs of the parties on this question. It was a part of the contract which Abraham and Vinik broke, that if they sold bread in violation of it they should *refund* Gewirtz the $275 he had paid for their promise not to do so. They have broken that part of the contract as much as any other, and there can be no question that the proper measure of damages for refusing to refund $275 is $275.

But if this direct method of looking at the matter is not the correct one, and the question is really the measure of damages for a breach of that part of the contract which bound the defendants not to sell bread

to certain customers and within a certain territory, there can be no doubt that the rule to be deduced from the authorities to be applied to a case like this, is that the $275 is to be considered liquidated damages and not a penalty. The sum is the natural and reasonable one to make the measure of damages. The damages would be difficult or impossible to ascertain by evidence. The sum is not mentioned in the contract by way of penalty and does not suggest one.

The alleged illegality of the contract, because it is in unreasonable restraint of trade, is not made out. There is a well known territory or community known as South Chicago that the court will understand the parties had in mind, and the restraint was confined to that place and community, and cannot be considered as more than partial and reasonable.

We are far from being "satisfied," as the Municipal Court Act says we must be to justify reversal, that "the judgment is contrary to the law and the evidence" or that it resulted from substantial errors directly affecting the matters at issue between the parties, and it is therefore affirmed.

*Affirmed.*